UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

THE CENTER FOR RESTORATIVE        CIVIL ACTION
BREAST SURGERY, LLC, *et al.*

VERSUS                      NO. 06-9985 and
                                   CONSOLIDATED CASES (ALL
BLUE CROSS BLUE SHIELD OF       CASES)
LOUISIANA, *et al.*

                                   SECTION I/4

<u>ORDER AND REASONS</u>

Before the Court is the motion to remand filed on behalf of plaintiffs, the Center for Restorative Breast Surgery, L.L.C. ("Center") and all named plaintiffs (collectively, "patients") in these consolidated cases.[1] Defendants in these consolidated cases are Blue Cross Blue Shield of Louisiana ("BCBS LA") and numerous Blue Cross Blue Shield state entities (collectively, "Home Plans") through which the patients have health insurance coverage. For the following reasons, plaintiffs' motion to remand is **GRANTED IN PART.**

*BACKGROUND*

---

[1]Also before the Court is defendants' motion to strike the declaration of Cheri Saltaformaggio, *see* Rec. Doc. No. 32, which was submitted in support of plaintiffs' motion to remand. *See* Rec. Doc. No. 125-3, pp. 15-17. As the Court does not rely on the Saltaformaggio declaration in any manner in reaching its decision, defendants' motion will be **dismissed as moot**.

The matter before the Court arises from 30 lawsuits brought by the Center and patients seeking damages associated with the alleged failure of the Home Plans[2] and BCBS LA to properly adjust insurance claims and pay for treatment rendered by the Center to the patients.[3]  The Center performed GAP/DIEP breast reconstruction procedures on patients who are insured by their respective state Blue Cross entities.[4]  The Center alleges that the Home Plans maintained open accounts with the Center for its services to the patients, yet the Home Plans have paid zero or minimal amounts on these accounts.[5]  Originally filed against defendants in Civil District Court for the Parish of Orleans, plaintiffs' lawsuits were removed to this Court in November, 2006, on the basis of federal question jurisdiction, diversity jurisdiction, and/or the federal

---

[2]In Civil Action No. 06-10022, BCBS LA is the Home Plan of the affected patients.  Civil Action No. 06-10022, Rec. Doc. No. 1-2, p. 15.  Therefore, as to that case, the term "Home Plan" includes BCBS LA.

[3]*See generally* Rec. Doc. No. 1-2; Rec. Doc. No. 125, p. 4.  While 31 lawsuits were originally removed, one lawsuit, Civil Action No. 06-10066, has been dismissed on motion of the parties.  Rec. Doc. No. 139.  As the 30 petitions contain similar allegations, the Court will refer to the lead case petition, Civil Action No. 06-9985, when discussing the general allegations and factual background.  All record document citations in this Order refer to the lead case unless specifically stated otherwise.
     The Court notes that there are differences in a few of the petitions which become relevant for the analysis of supplemental jurisdiction, and those differences are discussed in that section of this Order, *infra*.

[4]Rec. Doc. No. 1-2, p. 9.

[5]Rec. Doc, No. 1-2, p. 8; Rec. Doc. No. 125, p. 5.

officer removal statute.[6]  In the lawsuits, the Center asserts
direct claims against the Home Plans in open account, detrimental
reliance, quantum meruit, and unjust enrichment.[7]  The lawsuits
also include claims by the Center, as assignee of each patient,
against the Home Plans and BCBS LA related to the improper pricing
and adjustment of billed charges.[8]  As the parties have agreed,
many of the patients were insured through benefit plans that are
regulated by the Employee Retirement Income Security Act of 1974
("ERISA").[9]

　　　　Plaintiffs properly filed their motion to remand on December
19, 2006.[10]  On January 29, 2007, plaintiffs made numerous filings
seeking to withdraw their ERISA claims.[11]  In its Order and Reasons,
dated February 21, 2007, this Court permitted plaintiffs to
withdraw the patients' ERISA claims, including claims made by the
Center in its capacity as assignee of ERISA patients, and the Court

---

[6]Rec. Doc. No. 1.  Not all of the lawsuits alleged diversity
jurisdiction as a basis of removal, and only in Civil Action No. 06-10025 was
federal officer removal jurisdiction asserted.

[7]Rec. Doc. No. 1-2, pp. 7-8.

[8]Rec. Doc. No. 8-2, pp. 8-11.

[9]Rec. Doc. No. 125-3, pp. 19-31.

[10]Rec. Doc. No. 26.

[11]In particular, plaintiffs filed numerous notices of voluntary
dismissal and ex parte motions for leave to file amended complaints in this
matter.  Plaintiffs also filed contradictory motions to dismiss without
prejudice and for leave to file amended complaints in their cases against Blue
Cross Blue Shield of Alabama and Blue Cross Blue Shield of Montana.

ordered new briefing on the present motion to remand.[12]  Recognizing the effect of that order in eliminating claims against the non-diverse party in certain cases, plaintiffs conceded the presence of diversity jurisdiction in eight of the lawsuits, and this Court's jurisdiction over those cases now is not in dispute.[13]

Therefore, based on the complaints as amended, this Court must determine whether there is federal question jurisdiction pursuant to ERISA or the Federal Employees Health Benefits Act ("FEHBA"), diversity jurisdiction, or federal officer removal jurisdiction, and whether the exercise of supplemental jurisdiction is appropriate.

### LAW AND ANALYSIS

**I. Standards of Law**

*A.   Motion to Remand*

A district court must remand a case to state court if, at any time before final judgment, it appears that the court lacks subject matter jurisdiction.  28 U.S.C. § 1447(c).  The removal statute is strictly construed.  *Sea Robin Pipeline Co. v. New Medico Head Clinic Facility*, No. 94-1450, 1995 U.S. Dist. LEXIS 12013, at *2 (E.D. La. Aug. 14, 1995) (Clement, J.) (quoting *York v. Horizon*

---

[12]Rec. Doc. No. 116.

[13]Rec. Doc. No. 136, pp. 1-2; Rec. Doc. No. 136-2, pp. 6-7.

*Fed. Sav. & Loan Ass'n*, 712 F. Supp. 85, 87 (E.D. La. 1989) (Feldman, J.)).  When challenged by a plaintiff seeking remand, the defendant attempting to establish removal bears the burden of proof.  *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97, 42 S. Ct. 35, 37, 66 L. Ed. 144 (1921); *Sid Richardson Carbon & Gasoline Co. v. Interenergy Res.*, 99 F.3d 746, 751 (5th Cir. 1996) ("A party invoking the removal jurisdiction of the federal courts bears a heavy burden.").  Doubts concerning removal are to be construed against removal and in favor of remand to state court.  *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002) (citation omitted).

B.  *Federal Question Jurisdiction*

Defendants allege that these consolidated cases are properly before the Court because of federal question jurisdiction--i.e., the cases are ones "arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  "It is well settled that a cause of action arises under federal law only when the plaintiff's well-pleaded complaint raises issues of federal law."  *Heimann v. Nat'l Elevator Indus. Pension Fund*, 187 F.3d 493, 499 (5th Cir. 1999); *see also Caterpillar Inc. v. Williams*, 482 U.S. 386, 392, 107 S. Ct. 2425, 2429, 96 L. Ed. 2d 318 (1987) (stating that subject matter jurisdiction exists "when a federal

question is presented on the face of the plaintiff's properly pleaded complaint").

However, there is an exception to the well-pleaded complaint rule. "'[W]hen a federal statute wholly displaces the state-law cause of action through complete pre-emption,' the state claim can be removed." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 207-08, 124 S. Ct. 2488, 2495, 159 L. Ed. 2d 312 (2004) (quoting *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 8, 123 S. Ct. 2058, 156 L. Ed. 2d 1 (2003)). This is so because "[w]hen the federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law." *Id.* at 207-08, 124 S. Ct. at 2495. ERISA is such a statute. *Id.* at 208, 124 S. Ct. at 2495.

ERISA provides a uniform regulatory regime over employee benefit plans. "To this end, ERISA includes expansive pre-emption provisions, *see* ERISA § 514, 29 U.S.C. § 1144, which are intended to ensure that employee benefit plan regulation would be exclusively a federal concern." *Id.* Section 502(a) of ERISA sets forth a detailed civil enforcement mechanism that reflects Congress's enactment of a comprehensive statute for the regulation of employee benefit plans. *Id.* "[A]ny state-law cause of action that duplicates, supplements, or supplants the ERISA civil

enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." *Id.* at 209, 124 S. Ct. at 2495.

Such state law causes of action are completely preempted by ERISA § 502(a)(1)(B), thereby establishing federal question removal jurisdiction,[14] only when "an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B),[15] and where there is no other independent legal duty that is implicated by a defendant's actions." *Id.* at 210, 124 S. Ct. at 2496. By contrast, ERISA's broader conflict preemption provision, ERISA § 514, 29 U.S.C. § 1144,[16] does not provide removal jurisdiction, but merely serves as an affirmative defense to claims that are not

---

[14]As explained in *St. Luke's Episcopal Hosp. v. Acordia Nat'l.*, No. 05-1438, 2006 WL 3093132, 39 Employee Benefits Cas. 1114, 1117-18 (S.D. Tex. June 8, 2006):

> The fact that a given federal law might "apply" or provide a federal defense to a state-law cause of action is insufficient to establish federal question removal jurisdiction. Complete preemption is required. *See Franchise Tax Bd.*, 463 U.S. at 23-24. "In complete preemption a federal court finds that Congress desired to control the adjudication of the federal cause of action to such an extent that it did not just provide a federal defense to the application of state law; rather, it replaced the state law with federal law and made it clear that the defendant has the ability to seek adjudication of the federal claim in a federal forum." 14B Charles Alan Wright et al., Federal Practice and Procedure § 3722.1 (3d ed. 1998).

[15]ERISA § 502(a)(1)(B) provides: "A civil action may be brought-(1) by a participant or beneficiary-... (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

[16]Section 514 of ERISA states that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described" in ERISA. 29 U.S.C. §1144.

completely preempted.  *See, e.g.*, *Arana v. Ochsner Health Plan*, 338 F.3d 433, 439 (5th Cir. 2003).

C.  *Diversity Jurisdiction*

Defendants also assert that there is diversity jurisdiction pursuant to 28 U.S.C. § 1332 in many of these consolidated cases because defendant BCBS LA has been improperly joined to defeat diversity.[17]  There are two ways to establish improper joinder: (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court.  *Smallwood v. Ill. Cent. R.R.,* 385 F.3d 568, 573 (5th Cir. 2004) (en banc).[18]  In *Smallwood v. Illinois Central Railroad*, the United States Court of Appeals for the Fifth Circuit restated the law with respect to the second method of establishing improper joinder, which is at issue in this case:[19]

> [T]he test for fraudulent joinder is whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant.  To reduce possible confusion, we

---

[17]Rec. Doc. No. 5-1, p. 22.

[18]The majority opinion in *Smallwood* adopted the term "improper joinder" in lieu of the term "fraudulent joinder."  *Smallwood*, 385 F.3d at 571 n.1.

[19]The first method of establishing improper joinder is not at issue since defendants do not assert that there has been actual fraud in the pleading of jurisdictional facts.

-8-

adopt this phrasing of the required proof and reject all others, whether the others appear to describe the same standard or not.

There has also been some uncertainty over the proper means for predicting whether a plaintiff has a reasonable basis of recovery under state law.  A court may resolve the issue in one of two ways.  The court may conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendants.  Ordinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder. That said, there are cases, hopefully few in number, in which a plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder.  In such cases, the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry.

385 F.3d 568, 573 (5th Cir. 2004) (citing *Travis v. Irby*, 326 F.3d 644, 648 (5th Cir. 2003)) (footnotes omitted).

The "burden of persuasion placed upon those who cry 'fraudulent [or improper] joinder' is indeed a heavy one." *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir. 1981).  In determining the validity of an improper joinder claim, "the district court 'must evaluate all of the factual allegations in the light most favorable to the plaintiff, resolving all contested issues of substantive fact in favor of the plaintiff.'" *Burden v. Gen. Dynamics Corp.*, 60 F.3d 213, 216 (5th Cir. 1995) (quoting *B., Inc.*, 663 F.2d at 549).  The court must also resolve all ambiguities in the controlling state law in plaintiff's favor.  *Id.*

**II. Discussion**

*A. ERISA Preemption*

Defendants assert that the Center's direct state law claims against the Home Plans are subject to complete preemption under ERISA.[20]   As stated, state law causes of action are completely preempted by ERISA § 502(a)(1)(B) and federal question jurisdiction is established when both:   (1) an individual, at some point in time, could have brought the claim under ERISA, and (2) there is no legal duty independent of ERISA or the plan terms that is implicated by the defendant's actions.   *Davila*, 542 U.S. at 210, 124 S. Ct. at 2496.

Therefore, to determine whether the Center's direct claims against the Home Plans are completely preempted, the Court must first determine whether the Center, at some point in time, could have brought its claims pursuant to ERISA.   A medical provider has standing to sue in federal court under § 502(a) if a plan beneficiary or participant has assigned to the provider the individual's right to benefits under the plan.   *Hermann Hosp. v. MEBA Med. & Benefits Plan*, 845 F.2d 1286, 1290 (5th Cir. 1988); *St. Luke's*, 39 Employee Benefits Cas. at 1122.

---

[20]Rec. Doc. No. 132, p. 11.  Defendants concede that the claims brought by or on behalf of the non-ERISA patients are not subject to complete preemption under ERISA, and that this Court may only exercise jurisdiction over those claims if diversity jurisdiction exists or if the exercise of supplemental jurisdiction is appropriate.  Rec. Doc. No. 132, p. 10.

The Center asserted claims in its amended petitions as "assignee of each patient/plaintiff,"[21] including patients with ERISA plans.  Although the Center has since dropped any assigned claims from ERISA patients, that is of no consequence here since the Center holds the assignments and indeed moved to assert them "at some point in time." *Davila*, 542 U.S. at 210, 124 S. Ct. at 2496.  For purposes of the first prong, the Center "had an assignment of benefits from [patients] and could have sued under section 502 of ERISA as an assignee." *St. Luke's*, 39 Employee Benefits Cas. at 1122.

However, this assignment of benefits does not alone determine whether the Center's claims are completely preempted.  Despite its standing to sue under ERISA, the Center's claims are completely preempted only if, under *Davila*'s second prong, there is no independent legal duty that supports the Center's direct claims.  The Center's direct claims are in open account, detrimental reliance, quantum meruit, and unjust enrichment.[22]  The Center asserts that these are "independent causes of action based on dealings between the healthcare plans and physicians."[23]

---

[21]Rec. Doc. No. 1-2, p. 8 § B.

[22]Rec. Doc. No. 1-2, pp. 7-8.

[23]Rec. Doc. No. 125, p. 15.

In *Transitional Hospitals Corp. v. Blue Cross & Blue Shield of Texas, Inc.*, the Fifth Circuit addressed whether a hospital's claims against an ERISA plan insurer were subject to complete preemption. 164 F.3d 952 (5th Cir. 1999). The hospital alleged that, prior to admitting the patient, defendants misrepresented that the ERISA plan would pay 100% of the patient's hospital bills after Medicare benefits were exhausted. *Id.* at 953. The hospital sued defendants based on breach of contract and common law and statutory misrepresentation.

The Fifth Circuit held, "ERISA does not preempt state law when the state-law claim is brought by an independent, third-party health care provider (such as a hospital) against an insurer for its negligent misrepresentation regarding the existence of health care coverage." *Id.* at 954. However, since the hospital's breach of contract claims were "based on defendants' alleged failure to pay the full amount of benefits due under the terms of the [ERISA] policy," those contract claims were preempted.[24] *Id.* at 955.

In *Transitional Hospitals Corp. of Louisiana, Inc. v. Louisiana Health Service*, the hospital alleged that prior to its admitting the patient for treatment, defendant Blue Cross

---

[24]The Court notes that, while *Transitional Hospitals* was decided prior to *Davila*, the basis for the Fifth Circuit's holding on preemption remains valid under *Davila* and this Court is still guided by it. *See generally St. Luke's*, 39 Employee Benefits Cas. at 1122 (noting that *Davila* has not reversed all Fifth Circuit ERISA preemption precedent).

-12-

erroneously represented that it would be reimbursed for treatment rendered under the patient's FEHBA plan.[25]  No. 02-354, 2002 WL 1303121, at *1 (E.D. La. June 12, 2002) (Zainey, J.).  The hospital sued Blue Cross for breach of contract and detrimental reliance, and the Court held that these third-party provider claims were not completely preempted.  *Id.* at *3.  The Court noted that plaintiffs' breach of contract claim did not require determination of a federal right since the claim was based on alleged assurances of prior approval by Blue Cross, as opposed to the terms of the benefit plan itself.  *Id.* at *2.

Likewise, in a post-*Davila* case, *St. Luke's Episcopal Hospital v. Acordia National*, the hospital alleged that it relied on defendants' representations in the precertification process that the treatment provided would be covered under the patient's ERISA plan.  No. 05-1438, 2006 WL 3093132, 39 Employee Benefits Cas. 1114, 1126 (S.D. Tex. June 8, 2006) (Rosenthal, J.).  The Court held:

> Acordia's potential liability to St. Luke's for misrepresentation-during-precertification is not dependent on the Plan terms because Acordia can be liable even if it correctly denied coverage under the Plan terms. The statutory and common-law duties allegedly

---

[25]Although the case involves an FEHBA plan, the Court's analysis of the complete preemption argument was based on ERISA precedent; the Court noted that no cited authority "suggest[ed] that preemption under FEHBA would be any broader than that recognized by ERISA."  *Louisiana Health Service*, No. 02-354, 2002 WL 1303121, at *3.  Therefore, the Court's analysis of complete preemption is relevant here.

> breached by the representation about coverage and
> eligibility during precertification implicate the Plan,
> but do not derive from the Plan or depend wholly on the
> Plan terms.

*Id.* Accordingly, the Court found that the hospital's misrepresentation-during-precertification claim was not completely preempted. *Id.*

Upon careful review of the petitions, the Court finds that the Center's direct claims against the Home Plans also are based on the prior approval/misrepresentation theory of recovery. In its amended petition, the Center pleads that the Home Plans maintained open accounts with the Center, yet "[d]espite prior approval of the charges for reconstructive breast surgery and amicable demand," the Home Plans have not paid the charges.[26] The Center also alternatively alleges that the Home Plans "represented to the Center by [their] conduct and words that [they] would pay a reasonable price for the medical services provided by the Center as an out-of-network provider" and that the Center detrimentally relied on those representations.[27]

The Center's direct state law claims against the Home Plans, including its open account claim, do not depend on the right to

---

[26]Rec. Doc. No. 1-2, p. 8 ¶4. The Court notes that while two cases do not contain amended state court petitions, in those cases the original state court petitions contain the language quoted in the main text. *See* Civil Action Nos. 06-10020, Rec. Doc. No. 3-2, p. 5; Civil Action No. 06-10039, Rec. Doc. No. 1-2, p. 8.

[27]Rec. Doc. No. 1-2, p. 8 ¶7.

payment under the benefit plans.  These claims depend wholly on the truth and legal effect of the alleged prior approval and misrepresentations by the Home Plans.  As such, consistent with the holdings in *Davila*, *Transitional Hospitals*, and *St. Luke's*, the Center's direct claims are based on a legal duty that is independent of ERISA and the plan terms.  *Davila*, 542 U.S. at 210, 124 S. Ct. at 2496.  These direct claims are not completely preempted and cannot be a basis for federal question removal jurisdiction.

## B. Diversity Jurisdiction

Having found no basis for federal question jurisdiction, this Court must still resolve the parties' dispute as to whether diversity jurisdiction exists in twelve of the removed lawsuits.[28] Defendants assert that BCBS LA is improperly joined in these twelve lawsuits and that there is complete diversity between the properly joined parties.  Plaintiffs counter that they are third-party beneficiaries of a contractual agreement among BCBS LA and the Home Plans, and that they, therefore, have a viable claim against BCBS LA.[29]  Whether or not BCBS LA is improperly joined depends on a dispute between the parties as to whether, under Louisiana law,

---

[28]Rec. Doc. No. 132-2, p. 3; Rec. Doc. No. 132-3, pp. 12-13.

[29]Plaintiffs also allege that this contractual duty provides a basis to bring tort claims against BCBS LA.

plaintiffs may be legitimate third-party beneficiaries of the contract with BCBS LA.

The Louisiana Civil Code provides, "A contracting party may stipulate a benefit for a third person called a third party beneficiary." La. Civ. Code art. 1978. "Once the third party has manifested his intention to avail himself of the benefit, the parties may not dissolve the contract by mutual consent without the beneficiary's agreement." *Id.* This contract for the benefit of a third party is commonly referred to under Louisiana law as a "stipulation *pour autrui." Joseph v. Hosp. Serv. Dist. No. 2 of Parish of St. Mary*, 939 So. 2d 1206, 1211 (La. 2006). There are three criteria for determining whether contracting parties have provided such a benefit for a third party: 1) the stipulation for a third party is manifestly clear; 2) there is certainty as to the benefit provided the third party; and 3) the benefit is not a mere incident of the contract between the promisor and the promisee. *Id.* at 1212. There is no general requirement that a stipulation *pour autrui* be in writing.[30]  *Id.* at 1215.

---

[30]The Court notes that in determining whether such an arrangement exists, under general principles of Louisiana contract law, "[w]hen a contract can be interpreted from the four corners of the instrument, the question of contractual interpretation is answered as a matter of law." *Mobil Exploration & Producing U.S. Inc. v. Certain Underwriters*, 837 So. 2d 11, 24 (La. Ct. App. 1st Cir. 2002) (citing *Brown v. Drillers, Inc.*, 630 So. 2d 741, 749-50 (La. 1994)). However, the use of extrinsic evidence, with the findings of fact entailed therein, is proper where a contract is found to be ambiguous after an examination of the four corners of the agreement. *Id.* at 23.

In order to prevail on a motion for summary judgment or at trial, the party claiming the benefit, in this case the plaintiffs, would bear the burden of proving the stipulation *pour autrui*. La. Civ. Code art. 1831; *Joseph*, 939 So. 2d at 1212. However, as to a motion to remand, the heavy burden of proving improper joinder rests with defendants. *B., Inc.*, 663 F.2d at 549. Defendants must prove that there is "no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Smallwood*, 385 F.3d at 573. Considering plaintiffs' petitions and the evidence and arguments of the parties, the Court concludes that defendants have not satisfied their burden under *Smallwood*.

As assignee of the rights of non-ERISA patients, the Center asserts in its amended petitions that there was a contract between BCBS LA and the Home Plans to facilitate claim pricing and adjustment for medical services performed in Louisiana. Plaintiffs further assert that this contract was intended to directly benefit the patient/plaintiffs. Plaintiffs assert that BCBSLA and the Home Plans breached their contract duty to the patient/plaintiffs in several respects, including by incorrectly pricing and adjusting billed charges.[31]  Defendants counter that there is no direct contract between the Home Plans and BCBS LA—only an agreement

---

[31]Rec. Doc. No. 1-2, pp. 8-10.

between BCBS LA and the Blue Cross and Blue Shield Association—and, therefore, no basis for plaintiffs' contract action against BCBS LA.

Under *Smallwood*, this Court has limited discretion to pierce the pleadings to resolve contested factual allegations.   Such an inquiry should only be conducted in those "cases, hopefully few in number, in which a plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder." *Smallwood*, 385 F.3d at 573.   Assuming that piercing the pleadings is appropriate here, the Court finds that BCBS LA is not fraudulently joined because plaintiffs at most have "misstated" the contracting parties.[32]   Even if, as defendants assert, the direct contractual arrangement is between BCBS LA and the Blue Cross and Blue Shield Association, as opposed to the Home Plans directly,[33] the patient/plaintiffs may still be third-party beneficiaries of that contract.   As such, they may have a valid basis on which to assert contract claims against BCBS LA.

---

[32]The declaration of a BCBS LA officer states that BCBS LA's "sole responsibilities with respect to any claims of Center patients issued contracts of insurance by the Home Plans" involved verifying the Center's out-of-network status, forwarding claims to the Home Plans, and informing the Home Plans what the in-network reimbursement amount would have been.  Rec. Doc. No. 125-6, p. 5.  The officer stated, "These responsibilities arise solely from Blue Cross of Louisiana's license agreement with the Association." *Id*.  Thus, while this and other statements in the record do not indicate a direct contract between BCBS LA and the Home Plans, they do indicate that a contract exists to which the patient/plaintiffs may be third-party beneficiaries.

[33]Rec. Doc. No. 132-2, p. 5.

As no party has produced the contract(s) in question to prove or disprove this third-party status, and since this Court is required to resolve contested issues of fact in plaintiffs' favor, this Court cannot find that there is no reasonable basis to predict that plaintiffs might be able to recover against BCBS LA. *See generally Hosp. Serv. Dist. No. 3 of Parish of LaFourche v. Fidelity & Deposit Co. of Md.*, No. 99-0752, 1999 WL 294795, at *4 (E.D. La. May 11, 1999) (Vance, J.) (granting remand after finding, "As the Court must consider any factual ambiguity in favor of the non-removing party, it is not inconceivable that plaintiff will be able to establish a third-party beneficiary cause of action in state court."). BCBS LA has not been improperly joined.[34]

## C. *FEHBA and Federal Officer Removal Jurisdiction*

Defendants assert that Civil Action No. 06-10025 is uniquely removable as a federal question under the FEHBA, 5 U.S.C. § 8901 *et seq.*, and under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), because one of the patients on whose behalf the Center brings claims was enrolled in a FEHBA-governed plan. As defendants argue, plaintiffs' notice of voluntary dismissal was limited to "ERISA claims made by plaintiffs ... [and] does not extend to any

---

[34]Therefore, the Court need not reach the question of whether plaintiffs' petitions state a viable claim against BCBS LA under tort law or La. Rev. Stat. 22:250.17, the statute governing required coverage for reconstructive surgery following mastectomies.

-19-

claim made or that may hereafter be made by plaintiffs ... in any other capacity whatsoever."[35]  Therefore, plaintiffs did not dismiss any claims under the FEHBA.

The FEHBA's preemption provision provides that FEHBA policy terms relating "to the nature, provision, or extent of coverage or benefits (including payments with respect to benefits) shall supersede and preempt any State or local law ... which relates to health insurance or plans."  5 U.S.C. § 8902(m)(1).  The parties agree that FEHBA completely preempts state law actions related to the Act's civil enforcement provisions, including any action that touches directly upon a benefit determination.[36]  As stated in *Alabama Dental Assoc. v. Blue Cross & Blue Shield of Alabama, Inc.*, "[T]he [FEHBA] statute's preemptive scope extends to any action that touches directly upon a benefit determination, including those brought by providers who base their claims on the rights of their patients."  No. 05-1230, 2007 U.S. Dist. LEXIS 685 (M.D. Ala. Jan. 3, 2007) (citing *St. Mary's Hosp. v. Carefirst of Md., Inc.*, 192 F. Supp. 2d 384, 389 (D. Md. 2002)).

As the Center has not dismissed its claims on behalf of the FEHBA patient in this case, the Center is bringing claims regarding benefit determination on behalf of the FEHBA patient.   For

---

[35]Rec. Doc. No. 42, pp. 1-2.

[36]Rec. Doc. No. 125, p. 23.

instance, the Center asserts that BCBS LA and the Home Plan incorrectly priced charges and violated duties of good faith and fair dealing in the adjustment and pricing of billed charges.[37] These claims, asserted by the Center as an assignee of the FEHBA patient, are completely preempted. Therefore, there is federal question jurisdiction over those claims and the Court has supplemental jurisdiction over the remaining claims in Civil Action No. 06-10025.[38]

*D. Supplemental Jurisdiction*

Having found that this Court does not possess federal question or diversity jurisdiction over twenty-one of these consolidated cases, defendants invite the Court to retain those cases through the exercise of supplemental jurisdiction. Defendants argue that, prior to plaintiffs' dismissal of their ERISA claims in this Court, this Court possessed federal question jurisdiction over those cases on the basis of complete preemption under ERISA. However, the Court finds that there was no original jurisdiction over nineteen of the twenty-one cases when they were removed to federal court.[39]

_____

[37]Civil Action No. 06-10025, Rec. Doc. No. 1-2, pp. 10-11.

[38]As a basis for federal question and supplemental jurisdiction over this case exists, the Court need not reach the issue of whether there is also jurisdiction over the case pursuant to the federal officer removal statute.

[39]In two of the cases, Civil Action Nos. 06-10021 and 06-10035, there were no ERISA patients and removal was based solely on defendants' assertion of improper joinder which the Court has rejected. Moreover, in the amended state court petitions in sixteen other cases, plaintiffs stated that they

Accordingly, this Court may not exercise supplemental jurisdiction over those nineteen cases, and they must be remanded pursuant to 28 U.S.C. 1447(c) for lack of subject matter jurisdiction.  The Court recognizes that, prior to the dismissal of ERISA claims in this Court, there was federal question jurisdiction in two of the twenty-one cases, and the Court could exercise supplemental jurisdiction over those two cases.[40]

For the sake of thoroughness, and even in the event this Court were incorrect about its inability to exercise supplemental jurisdiction in nineteen of the cases, the Court will analyze whether the exercise of supplemental jurisdiction would be appropriate  in any of the twenty-one cases.  28 U.S.C. § 1367(c)(3) provides that a district court "may decline to exercise supplemental jurisdiction over a claim ... if ... the district

---

"have not made and hereby withdraw all claims by Plaintiffs against Defendant(s) that Defendant(s) may allege are against it in its capacity as an ERISA administrator and subject to ERISA."  Rec. Doc. No. 1-2, p. 11. Accordingly, plaintiffs specifically renounced any ERISA claims in their state court petitions in these sixteen cases prior to their removal to federal court.  Therefore, the Court finds that there could not be original jurisdiction over plaintiffs' claims in those sixteen cases on the basis of complete preemption under ERISA.  In the nineteenth case, Civil Action No. 06-10022, the only claims brought were the direct claims of the Center, which this Court has found are not subject to complete preemption and cannot be a basis for subject matter jurisdiction. Civil Action No. 06-10022, Rec. Doc. 1-2, pp. 2-3, 15-16.  Accordingly, in all of these nineteen cases, there was no original subject matter jurisdiction on which the Court can base the exercise of supplemental jurisdiction.

[40]Civil Action Nos. 06-10020 and 06-10039.  In these two cases, no amended petitions were filed in state court that include language regarding the withdrawal of ERISA claims.  Therefore, the claims of ERISA patients included in the petitions in these two cases would have been completely preempted.

court has dismissed all claims over which it has original jurisdiction." "District courts enjoy wide discretion in determining whether to retain supplemental jurisdiction over a state claim once all federal claims are dismissed." *Noble v. White*, 996 F.2d 797, 799 (5th Cir. 1993). Before the enactment of Section 1367, the United States Supreme Court noted that "needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of the applicable law." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726, 86 S. Ct. 1130, 1139, 16 L. Ed. 2d 218 (1966), quoted in *Noble*, 996 F.2d at 799. When deciding to remand under Section 1367(c), this Court considers the factors of economy, fairness, convenience, and comity. *Giles v. NYLCare Health Plans, Inc.*, 172 F.3d 332, 339 (5th Cir. 1999).

Where, as here,[41] "all federal-law claims are eliminated before trial, the balance of factors to be considered under the [supplemental] jurisdiction doctrine--judicial economy, convenience, fairness, and comity--will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350, 108 S. Ct. 614,

---

[41]This analysis is not applicable to Civil Action No. 06-10025, where certain state law claims are completely preempted under federal law. As stated, the Court has and will exercise supplemental jurisdiction over the remaining claims in that case.

619, 98 L. Ed. 2d 720 (1988); *see also Parker & Parsley Petroleum Co. v. Dresser Indus.*, 972 F.2d 580, 590 (5th Cir. 1992) (citing *Gibbs* and vacating judgment where "district court ... abused its discretion in retaining jurisdiction over the state law claims after it had dismissed the federal ... claim"); *Lupo v. Marrero Estelle Volunteer Fire Co. No. 1*, No. 05-2196, 2006 U.S. Dist. LEXIS 6503, at *19-20 (E.D. La. Feb. 22, 2006).

This Court has not addressed these consolidated cases beyond issues associated with the present motion to remand.  No trial dates have been set in these matters, and the Court understands that the parties will need to undertake further discovery before additional pretrial motions can be considered.  Were this Court to retain jurisdiction over the state law claims, it would have to delve into disputes under Louisiana state law, including issues of apparent first impression regarding the effect of La. R.S. 22:250.17,[42] and resolve extensive factual disagreements among the parties.  While defendants assert that remanding some of these cases would result in redundant proceedings, defendants themselves admit that a "'one-size-fits-all' treatment of these lawsuits" is inappropriate.[43]  While all the lawsuits involve claims by the

---

[42]Plaintiffs assert that defendants have violated their duty under La. R.S. 22:250.17.  Rec. Doc. No. 1-2, p. 10.  The Court's search indicates that there are no cases interpreting this statute, including any duties it may impose.

[43]Rec. Doc. No. 132, p. 6.

Center, the lawsuits are against different Home Plans with different policies and patients.[44]

Defendants also have moved to dismiss many of these cases on the basis of lack of personal jurisdiction and improper venue.[45] Accordingly, there is no certainty that these lawsuits would remain in one forum even if remand were denied.  Finally, the Court notes that concerns of comity would not favor exercising supplemental jurisdiction since the state court, "being of equal dignity with federal courts, [is] equally competent to address [the] potential [ERISA conflict preemption] defense."  *Giles*, 172 F.3d at 339.

Considering the above, the Court finds that the exercise of supplemental jurisdiction is not appropriate in Civil Action Nos.

---

[44]As defendants point out, there are two cases over which this Court has diversity jurisdiction for which there are counterpart lawsuits against the same Home Plans, but this Court lacks diversity jurisdiction in those counterpart lawsuits.  *Compare* Civil Action Nos. 06-10044 and 06-10049 with 06-10043 and 06-10017.  Defendants urge this Court, at a minimum, to exercise supplemental jurisdiction over these non-diverse "twin" lawsuits.  Rec. Doc. No. 132-2, p. 15.

That these lawsuits share the same Home Plan defendant would not be a sufficient basis to tip the balance in favor of exercising supplemental jurisdiction, even if this Court could exercise such jurisdiction.  Moreover, following plaintiffs' dismissal of their ERISA claims, there are no longer any claims against BCBS LA in the two diverse lawsuits.  Yet, claims against BCBS LA remain in the non-diverse "twin" lawsuits, thereby distinguishing them. Additionally, based on defendant's pending motion to dismiss, the two cases in which this Court has diversity jurisdiction may be dismissed for lack of personal jurisdiction.  Factual issues regarding the course of treatment for the patients in the different lawsuits may also lead to different legal outcomes.  In sum, the Court cannot be assured that retaining these two non-diverse lawsuits would further principles of fairness, economy, and convenience.  Comity and the balancing of factors in *Carnegie-Mellon*, given the infant state of this litigation, would dictate that the non-diverse cases should be remanded to state court for resolution of the state law claims contained therein.

[45]Rec. Doc. No. 115.  This motion is set for hearing on a future date.

06-10020 and 06-10039, i.e. the two cases in which the Court had subject matter jurisdiction at the time of removal.  For the same reasons, the Court also finds that, even if this Court is incorrect in holding that there was no original subject matter jurisdiction in the nineteen other cases, it would be inappropriate to exercise supplemental jurisdiction in those nineteen cases.

Accordingly, for the reasons stated,

**IT IS ORDERED THAT** plaintiffs' motion[46] to remand is **GRANTED IN PART**, and the nineteen cases indicated in the footnote[47] below are **REMANDED** to Civil District Court for the Parish of Orleans pursuant to 28 U.S.C. § 1447(c) for lack of subject matter jurisdiction.  Civil Actions Nos. 06-10020 and 06-10039 are also **REMANDED** to that Court for the reasons explained in this Order. The Court retains jurisdiction over the other nine cases[48] in this consolidated matter.

**IT IS FURTHER ORDERED** that Defendants' motion[49] to strike the declaration of Cheri Saltaformaggio is **DISMISSED AS MOOT**.

_____

[46]Rec. Doc. No. 26.

[47]Civil Action Nos. 06-10018, 06-10019, 06-10021, 06-10022, 06-10023, 06-10028, 06-10030, 06-10017, 06-10024, 06-10027, 06-10029, 06-10032, 06-10034, 06-10035, 06-10036, 06-10037, 06-10038, 06-10043, 06-10045.

[48]Civil Action Nos. 06-9985, 06-10025, 06-10026, 06-10033, 06-10040, 06-10041, 06-10042, 06-10044, 06-10049.

[49]Rec. Doc. No. 32.

**IT IS FURTHER ORDERED**, with the consent of the parties, that Blue Cross Blue Shield of Louisiana is **DISMISSED WITHOUT PREJUDICE** from the eight cases in which the Court has diversity jurisdiction, as indicated in the footnote[50] below.

New Orleans, Louisiana this   10th   day of May, 2007.

_____
LANCE M. AFRICK
**UNITED STATES DISTRICT JUDGE**

---

[50]Civil Action Nos. 06-9985, 06-10026, 06-10033, 06-10040, 06-10041, 06-10042, 06-10044, 06-10049.